UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JIMBRIAL INNOCENT, | CASE NO. 1:18CV2391 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Jimbrial Innocent ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying his applications for child's insurance benefits and supplemental security income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on February 7, 2019, Plaintiff asserts that the administrative law judge's ("ALJ") decision is not supported by substantial evidence for several reasons. ECF Dkt. #14. For the following reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES the instant case in its entirety WITH PREJUDICE.

## I. PROCEDURAL HISTORY

On November 17, 2014, Plaintiff protectively filed a Title XVI application for SSI. ECF Dkt. #13 ("Tr.")[1] at 23, 183, 294. Plaintiff also filed an application for childhood disability benefits on December 2, 2014. *Id.* at 23, 187, 198. Plaintiff noted that he filed an application for disability insurance benefits ("DIB") but that such application is not included in the record. ECF Dkt. #14 at 1 n.1; *see also* tr. at 86. In his applications, Plaintiff alleged disability beginning April 1, 2011 due to: arthritis in knees and back; severe depression; obesity; and high blood pressure.

---

[1] All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

1

Tr. at 336. Plaintiff reported a height of 6'3" and a weight of 622 pounds. *Id.* Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 125-82.

On July 17, 2015, Plaintiff requested an administrative hearing. Tr. at 210. On August 16, 2016, a hearing was held before an ALJ in which Plaintiff and a vocational expert ("VE") testified. Plaintiff was also accompanied by counsel and his mother, Diana Hartman. *Id.* at 74-124. Plaintiff amended his disability onset date to July 12, 2013. *Id.* at 46, 327. A subsequent hearing on August 30, 2017 was held before a different ALJ. *Id.* at 44-73, 252. Plaintiff, with counsel present, and a different VE testified. *Id.* at 44-73.

The ALJ issued his decision on October 3, 2017, finding Plaintiff not disabled and denying his applications for child's insurance benefits based on disability and SSI. *Id.* at 20-38. Plaintiff requested a review of the hearing decision, and on August 22, 2018, the Appeals Council denied review. *Id.* at 1-4, 290-92. On October 15, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. The parties consented to the jurisdiction of the undersigned. ECF Dkt. #11. On February 7, 2019, Plaintiff filed a merits brief, and Defendant filed a merits brief on April 24, 2019. ECF Dkt. #s 14, 17. Plaintiff filed a reply brief on May 1, 2019. ECF Dkt. #18.

## II. RELEVANT PORTIONS OF THE ALJ'S DECISION

On October 3, 2017, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 20-38. The ALJ stated that Plaintiff, born on December 12, 1994, had not attained age 22 as of July 12, 2013, the alleged onset date. *Id.* at 25. He further found that Plaintiff had not engaged in substantial gainful activity since July 12, 2013, the alleged onset date. *Id.* Continuing, the ALJ determined that Plaintiff had the following severe impairments: obesity, arthralgia of the lumbar spine and bilateral knees, and affective disorder. *Id.* The ALJ then indicated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 27.

After considering the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a) and §

416.967(a)[2], except for the following limitations: can occasionally climb ramps or stairs; can occasionally balance, stoop, kneel, and crouch; cannot climb ladders, ropes, or scaffolds; cannot crawl; can tolerate moderately loud environments; must avoid hazards such as unprotected heights and moving mechanical machinery; cannot perform commercial driving; can perform simple routine tasks and make simple work-related decisions; can tolerate frequent interaction with supervisors as well as occasional interaction with co-workers and members of the public; can relate with others on a superficial basis, meaning he cannot perform arbitration, mediation, confrontation, negotiation, or the supervision of others; can adapt to routine changes in the work environment; can tolerate a work environment that does not include strict production requirements or fast pace. Tr. at 29.

The ALJ then stated that Plaintiff has no past relevant work. Tr. at 36. He further found that Plaintiff was a younger individual age 18-49 on the alleged date of disability, has a limited education, and is able to communicate in English. *Id.* The ALJ noted that transferability of job skills was not an issue because Plaintiff did not have past relevant work. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff can perform. *Id.* at 37. Ultimately, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 12, 2013 through the date of his decision, October 3, 2017. *Id.*

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

---

[2] 20 C.F.R. § 416.901 *et seq.* governs SSI determinations, while 20 C.F.R. § 404.1501 *et seq.* governs DIB determinations. These regulations are virtually identical.

3

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The plaintiff has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the

evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a plaintiff on the merits or deprives the plaintiff of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. LAW AND ANALYSIS

Plaintiff raises three separate challenges to the ALJ's decision of October 3, 2017. ECF Dkt. #14. Plaintiff alleges that: (1) the ALJ failed to adhere to the treating physician rule for treating psychiatrist Dr. James; (2) the ALJ erred at step three of the sequential process when he found that Plaintiff's affective disorder did not meet the requirements of a listed impairment; and (3) the ALJ's RFC finding does not take into account all of the limitations resulting from Plaintiff's extreme obesity. *Id.*

### A. Treating Psychiatrist Dr. James

An ALJ must give controlling weight to the opinion of a treating source[3] if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(c)(2)[4]; *Price*

---

[3] The undersigned notes that the Social Security Administration has changed the treating physician rule for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

[4] Because the sections for DIB and SSI are virtually identical and for convenience, the undersigned will only cite to 20 C.F.R. § 416.927, even though 20 C.F.R. § 404.1527 also may apply. *See* ECF Dkt. #14 at 1 n.1 (Plaintiff

5

*v. Comm'r Soc. Sec. Admin.*, 342 Fed.Appx. 172, 175-76 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

If an ALJ declines to give controlling weight to the opinion of a treating source, he must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 416.927(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)). Although an ALJ must "consider" all of the factors in 20 C.F.R. § 416.927(c) and must "apply" the factors listed in 20 C.F.R. § 416.927(c)(2), including its subsections, through (c)(6) to determine the weight to give that opinion, he is not required to discuss every factor in his decision as long as he provides "good reasons." *See* 20 C.F.R. § 416.927(c)(2); SSR 96-2p, 1996 WL 374188, at *5 (1996)[5]; 20 C.F.R. § 416.945(a)(2); *Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."); *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion' not an exhaustive factor-by-factor analysis.") (internal citation omitted). Even a one sentence explanation for discounting a treating physician's opinion can suffice under the good reasons requirement. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider," and satisfied good reasons requirement.) (internal citations omitted).

---

noted that he filed an application for DIB but such application is not included in the record.).

[5] Effective March 27, 2017, SSR 06-03p, 96-2p, and 96-5p have been rescinded by Fed. Reg. Notice Vol. 82, No. 57, page 15263. These regulations are still effective for claims filed before March 27, 2017.

Under the "good reasons" rule, the ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, at *5. This allows a plaintiff to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544); *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011).

Plaintiff's treating psychiatrist, Dr. Christopher James, began treating Plaintiff from around August 11, 2011. Tr. at 709. In his mental RFC assessment that he completed on August 9, 2016[6], Dr. James diagnosed Plaintiff with major depression, recurrent with psychotic features. *Id.* at 34 (citing tr. at 709-11), 709. Dr. James acknowledged that Plaintiff has taken several medication trials with multiple side effect issues and poor efficacy, and he noted that Plaintiff was currently taking Latuda, 60 mg at bedtime. *Id.* at 709. Regarding attention and concentration necessary to perform simple tasks, Dr. James opined that Plaintiff would be off task greater than 25% of the time. *Id.* Specifically, he noted that Plaintiff would struggle with staying on task as well as having difficulty with social interaction. *Id.* When asked if Plaintiff were placed in a

---

[6] The ALJ mistakenly notes that the date of Dr. James' assessment was August 3, 2016, although the ALJ cited to the correct exhibit, Exhibit 9F. Tr. at 34 (citing tr. at 709-11).

7

competitive work environment that required working five days per week, eight hours per day, Dr. James estimated that Plaintiff would be absent from work 40% of the time, per month, as a result of his impairment(s). *Id.* at 710.

Dr. James further assessed Plaintiff's mental limitations for various activities, marking that Plaintiff was extremely limited in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. at 710. He found that Plaintiff had marked limitations in areas that included: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal work day and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and interact appropriately with the general public. *Id.* Dr. James found moderate limitations in areas, including: maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and set realistic goals or make plans independently of others. *Id.* at 710-11. Finally, Dr. James found Plaintiff was not significantly limited in areas, including: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; and respond appropriately to changes in the work setting. *Id.* Dr. James concluded that Plaintiff struggles with chronic mood issues as well as significant issues with social interaction. *Id.* at 711. The ALJ recited the aforementioned findings of Dr. James. *Id.* at 34.

An ALJ must make determinations based upon the record as a whole. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). So, too, must this Court upon judicial review. *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989) ("It is well established that judicial review of the Secretary's findings must be based upon the record taken as a whole."). The Sixth Circuit has also endorsed supporting a conclusion in a particular step of the ALJ's decision by looking to factual findings elsewhere in that decision. *See generally Forrest v. Comm'r of Soc. Sec.*, 591 Fed.Appx. 359, 365-66 (6th Cir. 2014) (finding that the ALJ made

sufficient factual findings elsewhere in his decision to support his conclusion at step three); *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step three medical equivalency determination).

The Court finds that the ALJ's reasons for affording less than controlling weight and only limited weight to Dr. James' opinion adheres to the good reasons requirement under the treating physician rule. A treating source's medical opinion is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record" 20 C.F.R. § 416.927(c)(2). Here, the ALJ reviewed Dr. James' treatment notes in his decision, discussing Plaintiff's symptoms, examinations, and treatment. Tr. at 32-33. The ALJ ultimately afforded "limited weight" to Dr. James' assessment. Tr. at 36. He noted that while Dr. James has an established treating relationship with Plaintiff, the level of limitation alleged was not consistent with the overall evidence. *Id.* For support, the ALJ noted that clinical findings consistently reflected that Plaintiff was cooperative, able to maintain good eye contact, that his thought process was linear and organized, and that his cognition was intact. *Id.* (citing tr. at 602-05, 608-11, 617-21, 624-25, 654-57). The ALJ pointed out that increases in Plaintiff's symptoms often coincided with treatment noncompliance, and Plaintiff described his mood as "pretty good overall" during an evaluation with Dr. James shortly before he completed the functional assessment. *Id.* (citing tr. at 498, 604-05, 608-09, 624-25, 658-61, 727). Thus, the ALJ attacked the consistency factor while also acknowledging the fact that Dr. James had "an established treating relationship" with Plaintiff. *Id.* at 36.

Plaintiff maintains that the reasons given by the ALJ for rejecting Dr. James' opinion have no relation to Plaintiff's social isolation, his inability to maintain attention and concentration, and his inability to maintain personal hygiene. ECF Dkt. #14 at 15. While Plaintiff points to several records to show Dr. James' opinion was well-supported and not inconsistent with the record to support an opposition conclusion, the standard of review for this Court is whether the ALJ applied the proper legal standards and whether substantial evidence supports the ALJ's decision to

attribute less than controlling weight to Dr. James' opinion, even if substantial evidence exists to support a contrary conclusion. ECF Dkt. #s 14, 18.

The ALJ's cited support undercuts Dr. James' extreme and marked social limitations and constitute "good reasons" to afford less than controlling weight to Dr. James' opinion. Specifically, the ALJ cited to numerous treatment notes indicating, for example, that Plaintiff was cooperative, maintained good eye contact, reported a good mood shortly before Dr. James' offered his opinion, and that worsening symptoms often coincided with treatment noncompliance. Tr. at 36. The ALJ acknowledged notes in Plaintiff's treatment history in which he reported social isolation. *Id.* at 30, 32 (citing tr. at 500, 612-16), 35. Throughout his decision, the ALJ recognized that Plaintiff's psychological signs and symptoms improved with treatment and medication, citing examples from 2013 through 2016. *Id.* at 32-35; *see* tr. at 498, 603-04, 606, 608-09, 624, 716, 727. The ALJ further acknowledged Plaintiff's anxiety and that he generally did not leave his house. *Id.* at 28 (citing 617-21), 30 (citing tr. at 342-49), 33 (citing tr. at 604-05). Despite this, Plaintiff was still able to maintain close friendships online. *Id.* at 28 (citing 342-49, 617-21). In light of Plaintiff's difficulty interacting with others, the ALJ made an RFC finding to include limitations such that Plaintiff should have no more than frequent interaction with supervisors, no more than occasional interaction with co-workers and the public, and would be able to relate with others no more than on a superficial basis. *Id.* at 29, 35.

Plaintiff also appears to attack the ALJ's reasoning with regard to his treatment of Plaintiff's ability to maintain attention and concentration. *See* ECF Dkt. #14 at 14-15. Dr. James opined a moderate limitation in the area of concentration, persistence, and maintaining pace. Tr. at 710. The ALJ agreed with Dr. James and also found a moderate limitation in this area. *Id.* at 28. The Court finds no error here since the ALJ's opinion was consistent with Dr. James finding in this area of mental functioning.

Plaintiff also challenges the ALJ's treatment of Dr. James' opinion because his observations of Plaintiff's inability to maintain personal hygiene was consistent with other treatment records. ECF Dkt. #14 at 14-15. The Court will address these concerns in the following subsection. *See* discussion *infra* Section V(B). Ultimately, given that the ALJ did provide

sufficient good reasons, the Court finds that the ALJ did not violate the treating physician rule and substantial evidence supports his treatment of Dr. James' opinion.

**B.      Step Three**

Plaintiff asserts that substantial evidence does not support the ALJ's Step Three finding that his mental impairment did not meet or medically equal the criteria of Listing 12.04. ECF Dkt. #14 at 11-14. For the following reasons, the Court finds that the ALJ's Step Three analysis is sufficient and substantial evidence exists to support the ALJ's determination that Plaintiff's impairments did not meet or medically equal Listing 12.04B.

The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 describes impairments for each of the major body parts that are deemed of sufficient severity to prevent a person from performing gainful activity. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. In the third step of the analysis to determine a claimant's entitlement to social security benefits, it is the claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment. *See* 20 C.F.R. §§ 416.920(a)(4)(iii) & 404.1520(a)(4)(iii); *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to meet a listed impairment, the claimant must show that his impairments meet all of the requirements for a listed impairment. 20 C.F.R. §§ 416.925(c)(3) & 404.1525(c)(3); *e.g.*, *Hale v. Sec'y of Health & Human Servs.,* 816 F.2d 1078, 1083 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). An impairment that meets only some, but not all, of the medical criteria does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

The ALJ found that Plaintiff suffered from severe medically determinable impairment of affective disorder. Tr. at 25. Plaintiff avers that affective disorders are evaluated under Listing 12.04, and the ALJ's decision supports that contention as he analyzed Plaintiff's mental impairment under Listing 12.04. *See* tr. at 27; ECF Dkt. #14 at 15. Listing 12.04 has three paragraphs, A, B, and C, a variation which must be satisfied in order to meet the severity of the Listing. 20 C.F.R. pt. 404, Subpt. P, App. 1 §§ 12.00(A)(2). A claimant must show that he meets the severity of one of these specified listings by showing that he meets both of the impairment-specific medical criteria in paragraph A and the functional limitations criteria in

11

paragraph B, or both the criteria in paragraph A and paragraph C. *Id.* Plaintiff argues that he satisfies both paragraphs A and B of Listing 12.04. ECF Dkt. #14 at 15-18.

The paragraph A criteria of Listing 12.04 provides as follows:

12.04 Depressive, bipolar and related disorders (see 12.00B3), satisfied by A and B, or A and C:
   A. Medical documentation of the requirements of paragraph 1 or 2:
      1. Depressive disorder, characterized by five or more of the following:
         a. Depressed mood;
         b. Diminished interest in almost all activities;
         c. Appetite disturbance with change in weight;
         d. Sleep disturbance;
         e. Observable psychomotor agitation or retardation;
         f. Decreased energy;
         g. Feelings of guilt or worthlessness;
         h. Difficulty concentrating or thinking; or
         i. Thoughts of death or suicide.

Listing 12.04A1, 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Part A2). In addition, the common functional limitations criteria in paragraph B of Listing 12.04 require that Plaintiff show that his impairment(s) resulted in:

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
      1. Understand, remember, or apply information (see 12.00E1).
      2. Interact with others (see 12.00E2).
      3. Concentrate, persist, or maintain pace (see 12.00E3).
      4. Adapt or manage oneself (see 12.00E4).

Listing 12.04B, 20 C.F.R. pt. 404, Subpt. P, App. 1 (Part A2).

As an initial matter, the ALJ cited to SSR 02-1p, which provides guidance on SSA policy concerning the evaluation of obesity in disability claims. *Id.* at 27 (citing SSR 02-1p, 2002 WL 34686291). This Ruling states that obesity must be considered when determining whether an individual has a listing-level impairment or combination of impairments and applies to other steps of the sequential process, including when the ALJ makes a RFC determination. *Id.* (citing SSR 02-1p). The Ruling states that obesity may cause or contribute to mental impairments, such as

depression, and the effects of obesity may be "subtle" and "may not be obvious." SSR 02-1p, 2002 WL 34686291, at *3, 6. It can affect an individual's social functioning. *Id.* at *6.

The ALJ did not address the paragraph A criteria of Listing 12.04, but found that Plaintiff did not satisfy the paragraph B or C criteria of Listing 12.04. Tr. at 27-28. The Court will first consider whether the ALJ properly addressed the paragraph B criteria of Listing 12.04.

### 1. Paragraph B: Interacting With Others

In interacting with others, the ALJ determined that Plaintiff has a moderate limitation, whereas Plaintiff avers the ALJ should have found a marked limitation. Tr. at 28; ECF Dkt. #14 at 17-18. The ALJ reasoned that Plaintiff described difficulty getting along with his teacher and classmates at school, and he reported suspicion of everyone and that he generally did not leave his house. Tr. at 28 (citing tr. at 617-21). The ALJ also stated that Plaintiff consistently presented as cooperative and able to maintain good eye contact upon examination. *Id.* (citing tr. at 602-05, 608-11, 617-21, 624-25, 654-57). The ALJ considered Plaintiff's indication that he was able to maintain an online relationship with an individual for more than a year and talked to close friends on Facebook daily. *Id.* (citing tr. at 342-49, 617-21).

Plaintiff avers that the ALJ did not consider that Plaintiff has spent the majority of his adulthood in his room and that he only leaves to attend appointments or to go to the corner store. ECF Dkt. #14 at 18. During the hearing, Plaintiff testified that he spends the majority of his day lying in bed. *Id.* at 17 (citing tr. at 57). He only leaves his house once or twice per month to go to the corner store or appointments. *Id.* (citing tr. at 60). When he is out in public, Plaintiff gets anxious; he feels like everyone is staring at him. *Id.* (citing tr. at 59). Plaintiff also contends that his testimony is consistent with his report to Mr. Davis, the consultative examiner. *Id.* (citing tr. at 618). Plaintiff further argues that his testimony is consistent with his reports to his providers at Ohio Guidestone. For example, on June 12, 2015, Mr. Innocent reported he was having social anxiety; he felt better overall when he was at home. *Id.* (citing tr. at 626). Also, during a mental health assessment in November 2015, Plaintiff reported that most of his days were spent in his room in bed. *Id.* (citing tr. at 633). Plaintiff further points out that Dr. Voyten, the state agency consultant, opined that Mr. Innocent had marked limitation in his ability to interact appropriately

13

with the general public. *Id.*; *see* tr. at 137. Plaintiff notes that the ALJ afforded "great weight" to Dr. Voyten's opinion, but failed to consider this opinion when assessing Plaintiff's limitations in social interaction. ECF Dkt. #14 at 18.

In light of the substantial evidence standard of review, the Court finds that the ALJ supported his determination of only a moderate limitation in interacting with others with substantial evidence. The ALJ applied the correct legal standards and provided enough support for his determination. *See Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). Specifically, the ALJ acknowledged that Plaintiff had difficulty in social interaction and found that he had limitations, albeit only "moderate." Tr. at 28. The ALJ did not find a more severe social limitation because of treatment notes indicating Plaintiff was able to maintain online relationships with friends. *Id.* The Court recognizes Plaintiff's arguments that there is a difference between in person social interaction and relationships online. However, the ALJ also supported his determination with Plaintiff's treatment notes showing cooperative social demeanor and an ability to maintain good eye contact. *Id.* Such treatment notes are a product of in person appointments. *See* tr. at 60.

### 2. **Paragraph B: Adapting or Managing Oneself**

In adapting or managing oneself, the ALJ determined that Plaintiff has a moderate limitation. Tr. at 28. Plaintiff avers the ALJ should have found an extreme limitation because he demonstrated an extreme limitation in his ability to maintain personal hygiene and attire appropriate to a work setting. ECF Dkt. #14 at 17. The ALJ reasoned that Plaintiff reported crying spells and presented with less than average energy. Tr. at 28. Plaintiff also reported problems sleeping secondary to racing thoughts, and Plaintiff noted that he did not handle stress well. *Id.* (citing tr. at 342-49). Plaintiff described a dependence on his mother for his activities of daily living,. but the ALJ also noted that this was in part related to his physical limitations. *Id.* Finally, the ALJ stated that Plaintiff presented with a higher level of functioning with regard to his ability to think logically and to use common sense and judgment. *Id.* (citing tr. at 617-21).

Plaintiff avers that the ALJ failed to consider Plaintiff's inability to maintain personal hygiene and attire when assessing his limitations in his ability to adapt and manage himself. ECF Dkt. #14 at 17. For support, Plaintiff points to the evaluation of Dr. David, the consultative

examiner whom the ALJ relied on in his reasoning of this paragraph B domain, and records from Dr. James, Plaintiff's treating psychiatrist. *Id.* Dr. David observed a strong odor emanating from Plaintiff that was difficult to tolerate. *Id.*; tr. at 620. Dr. Davis noted that Plaintiff's strong body odor made it difficult for him to remain in Plaintiff's presence for the length of time needed to finish the interview. Tr. at 620. Additionally, Dr. James consistently noted Plaintiff was malodorous (Tr. at 622, 626, 628, 630), unkempt (Tr. at 626, 628), and disheveled (Tr. at 630). Dr. James opined that Plaintiff had an extreme limitation in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. at 710.

Contrary to Plaintiff's assertions, the ALJ acknowledged that Plaintiff was unkempt and malodorous in December 2014, after running out of medications for three weeks. Tr. at 33 (citing tr. at 608). The ALJ also discussed consultative psychologist Dr. Davis' examination in January 2015, when Plaintiff was also malodorous. *Id.* at 33 (citing tr. at 620-21). Dr. Davis opined that Plaintiff "would not be readily accepted in an employment situation," remarking that Plaintiff's appearance was "affected by his excessive weight. His body odor contraindicated my being able to tolerate the odor easily. It was difficult for me to remain in his presence" to finish the interview. *Id.* at 620-21. However, the ALJ afforded limited weight to Dr. Davis' opinions, in part, because his "concerns related to [Plaintiff's] appearance and body odor [have] limited bearing on [his] psychological capabilities." *Id.* at 36. The ALJ thus indicated there was insufficient nexus between Plaintiff's odor and his psychological problems.

A claimant's mental limitations can be manifested in his ability to maintain neatness and cleanliness. *See, e.g.*, tr. at 709-10 (Social Security Mental RFC assessment form expressly requires an opinion to assess a claimant's "ability…to adhere to basic standards of neatness and cleanliness."). Dr. Davis' note regarding Plaintiff's body odor did not suggest that it was due to Plaintiff's mental condition. Rather, he appears to suggest that it was caused by Plaintiff's obesity. Tr. at 620 ("[His] appearance is affected by his excessive weight."). In a function report, Plaintiff stated it was "hard to get completely clean," but did not attribute his odor or grooming to his mental impairments. *See id.* at 343. Although many treatment notes indicate Plaintiff as being

"malodorous," these same treatment notes, at times, indicate that Plaintiff was fairly groomed, or even well groomed. Tr. at 603-04, 609, 622, 624.

Contrary to Plaintiff's contention, the ALJ did consider Plaintiff's ability to maintain personal hygiene and appropriate work attire. Although the ALJ did not cite specific support at step three of his decision, he discussed Plaintiff's treatment records that indicated that Plaintiff was malodorous and unkempt elsewhere in his decision. Tr. at 33, 36; *see generally Forrest v. Comm'r of Soc. Sec.*, 591 Fed.Appx. 359, 365-66 (6th Cir. 2014) (finding that the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three); *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step three medical equivalency determination). Accordingly, the Court finds that the ALJ supported his determination of only a moderate limitation in adapting or managing oneself with substantial evidence.

### 3. Paragraph A

The parties dispute whether the paragraph A criteria are met. *See* ECF Dkt. #14 at 16; ECF Dkt. #17 at 19-20; *see* tr. at 25. The Court notes that the ALJ did not expressly address paragraph A of Listing 12.04. Plaintiff avers that the ALJ implicitly acknowledged that Plaintiff satisfied the paragraph A criteria of Listing 12.04 when he found that Plaintiff has a severe affective disorder at step two. ECF Dkt. #14 at 16.

This Court's review is limited to the ALJ's decision. Listing 12.04 requires both paragraphs A and B or A and C to be satisfied to meet the listing. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2). The ALJ did not address paragraph A of Listing 12.04. Tr. at 27. However, by discussing the paragraph B criteria, the ALJ implicitly found that the paragraph A criteria were met. The ALJ even considered whether the paragraph C criteria were satisfied, lending further support that he implicitly found that the paragraph A criteria were met. Regardless of whether the ALJ found or did not find that the paragraph A criteria were met is ultimately immaterial. As previously discussed, the Court finds no error with the ALJ's treatment of the paragraph B criteria. Accordingly, the ALJ's finding that Listing 12.04 was not met is supported by substantial evidence.

16

## C. RFC

A claimant's RFC is an assessment of the most that a claimant "can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 404.1545(a)(2)(3). The claimant bears the responsibility of providing the evidence used to make a RFC finding. 20 C.F.R. § 404.1545(A)(3). However, the RFC determination is one reserved for the ALJ. 20 C.F.R. §§ 404.1545(c); *see Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009); SSR 96-5p, 1996 WL 374183, at *5. SSR 96-8p provides guidance on assessing RFC in social security cases. SSR 96-8p. The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess his work-related abilities on a function-by-function basis. *Id*. Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, a need for a structured living environment, and work evaluations. *Id*. In addition, SSR 02-1p requires an ALJ to consider obesity when making a RFC determination. SSR 02-1p, 2002 WL 34686291, at *7 ("When we identify obesity as a medically determinable impairment [], we will consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments that we identify.").

Plaintiff contends that the ALJ's RFC determination should have included a limitation that he would require an accommodation because he could not sit on a regular chair due to his weight that is in excess of 600 pounds. ECF Dkt. #14 at 19. Plaintiff contends that this is a significant omission because the Plaintiff's attorney questioned the VE about this specific issue as follows:

> Q: If the individual, because of his obesity, was unable to fit in a regular chair would that have any effect on your answers?
>
> A: Yes. And of course, regular, I'm taking it to mean just what that means the dictionary of regular. If it requires an accommodated chair then [sic] it would require an accommodation. We're not getting into issues of the Disability Act, which would see that as a reasonable accommodation, but in DOL standards that would require an accommodation, so there would be no work for that person given those parameters.

17

Tr. at 71.

Plaintiff did not question the VE further about having a chair accommodation and there are no records or medical opinions Plaintiff can point to that show that Plaintiff required an accommodated chair. Plaintiff relies solely on the fact that he weighs over 600 pounds. However, Plaintiff did not even establish how much weight a "regular" chair under the industry standard could withstand. *Cf.* ECF Dkt. #18 at 3 (Only in his reply brief does Plaintiff state that a standard office chair will only support up to 250 pounds, citing to an unofficial blog post and website[7].).

Even if Plaintiff had established that his body weight exceeds what a standard workplace chair could hold, Plaintiff would still need more to meet his burden, such as opinion evidence of record. *See Holcomb v. Comm'r of Soc. Sec.*, No. 1:18CV0191, 2019 WL 1102250, at *9-11 (N.D. Ohio Jan. 14, 2019), *report and recommendation adopted*, No. 1:18-CV-191, 2019 WL 1099548 (N.D. Ohio Mar. 8, 2019) (affirming ALJ's decision where plaintiff established that he weighed in excess of what an industry standard chair could withstand but he did "not point to any opinion evidence that he has limitations which would require a special chair"); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (stating that the claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five). Therefore, the Court finds that the ALJ did not err in his RFC determination and his decision was supported by substantial evidence.

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

Date: March 3, 2020        */s/George J. Limbert*
                                                    GEORGE J. LIMBERT
                                                    UNITED STATES MAGISTRATE JUDGE

---

[7] https://www.conceptseating.com/weight-standard-office-chair-holds; https://www.officechairs.com/blog/how-much-weight-does-standard-office-chair-hold.